## Lyman Chamberlain *versus* James Carter.

In assumpsit on an account for fuel sold and delivered at various times, the plaintiff, to prove the delivery, called certain wharfingers, who testified that they found on their books these charges, in their handwriting, to the plaintiff, for fuel delivered by his order to the defendant ; that they sent to the defendant all the fuel charged ; that the plaintiff ordered them to send to the defendant all the articles charged ; and that they directed their carmen to carry the same to the defendant ; but that they had no recollection of the particular instances. They also stated where some of the carmen now resided, who were then in their employ, and that they did not know where the others resided. The plaintiff then summoned and examined the carmen whose places of residence had been thus disclosed, and some of them testified that they remembered taking fuel to the defendant's house by order of their employers, and all of them said that they always carried all that they were ordered to carry, but they could not verify any particular item in the account. No servant of the defendant was called by the plaintiff to prove that the fuel had been received ; neither had the plaintiff made any endeavour, before the commencement of the trial, to procure the testimony of the carmen. It was *held*, that the evidence produced was not secondary in its nature, but was competent evidence for the jury.

ASSUMPSIT on an account for wood and coal sold and delivered at various times to the defendant. Trial before *Wilde* J.

To prove the delivery of the items of the account, the following testimony was offered.

The wharfingers were called who were supposed to have sent the fuel to the defendant by the plaintiff's order. They testified, that they found on their books these charges, in their handwriting, to Chamberlain, for fuel delivered by his order to Carter ; that they did send to Carter all the fuel charged ; that Chamberlain ordered them to send to Carter all the articles charged ; and that they directed their carmen to carry the same to him. On cross examination, they testified, that they had no special recollection of the instances, but that they never entered such charges on their books until the fuel was laden and sent out, the general custom being to have an order slate, on which orders were written when received, but the charge was not made on the books until the fuel was sent ; that they were always very careful in giving exact directions to their carmen, and seldom found any mistake made as to the delivery ; that when one was made, they usually heard of it at once, and rectified it ; and they had no doubt that the fuel in the present case was all duly carried and delivered.

One of these witnesses stated, that he had once or twice, in passing by Carter's house, seen fuel lying there, which he had sent there by order of Chamberlain. Another of them, that he carried his fuel himself, and delivered it at Carter's house.

It was then objected by the defendant, that the carmen themselves should be called. The wharfingers were then asked where the men were, who during that period had been in their employ. They stated that one was dead, some still in their employ, and some in the city not in their employ, and of some, they did not know where they were. The next morning all of the carmen whose places of residence were stated by the former witnesses, were examined. Some of them testified, that they did remember taking fuel to Carter's house by order of their employers ; all said that they always carried all that they were ordered to carry, but how much or when, they could not say, having no recollection of any particular instances, and verifying no particular item in the account filed. They also testified, that they always received express directions from their employers, before they left the yard with wood or coal for their customers, and that they always complied with these directions.

No servant of the defendant was called by the plaintiff, and no evidence offered that any such servant could not be found. No evidence was offered of any endeavour made on the part of the plaintiff, before the commencement of the trial, to procure the testimony of the carmen.

The plaintiff called two witnesses, who worked in his shop, who testified, that Carter came to the shop, and requested the plaintiff to send him wood and coal whenever his servants called ; that Carter frequently came and ordered fuel himself ; and that his servants also came and ordered it. And a wharfinger swore, that in one instance, when it was delayed, a servant of Carter came and inquired into the delay and hastened the delivery.

It was objected by the defendant, that no part of this evidence, excepting what related to the loads carried by the witness himself, who charged them in his books, ought to be received ; that the carmen themselves, and the servants of the defendant, should be called, or it should appear that due diligence had been used to obtain the testimony of all the carmen

Chamberlain
  *v.*
Carter.

employed, and that all had been obtained who could be, and that the servants of Carter, spoken of, should have been called.

These objections were overruled, and a verdict rendered for the amount of all the charges or bills sworn to by the wharfingers, with interest from the date of the writ.

The defendant moved for a new trial, on the ground of misdirection of the judge.

*June 14th.*     *Parsons, Stearns* and *Hillard,* for the defendant, cited *Williams* v. *East India Co.* 3 East, 192 ; *Eastman* v. *Moulton,* 3 N. Hamp. R. 156.

*Shipley,* for the plaintiff, cited *Curren* v. *Crawford,* 4 Serg. & Rawle, 6.

*June 28th.*     *Per Curiam.*     The only question is, whether the evidence offered was competent evidence for the jury.   The objection was, that it was secondary, and implied the existence of better evidence not produced.   But we think it was not in its nature secondary.   It was all competent evidence, to be weighed and considered by the jury.   Having proved that the defendant had given the plaintiff general orders to furnish wood and coal when applied for by himself or his servants, the evidence offered was of the intermediate agents, through whom the articles were supplied.   And this evidence was not in its nature secondary, that is, evidence admissible only to supply the place of other evidence better in its nature, but which must first be shown not to be within the reach of the party.

The case cited by the defendant's counsel, *Williams* v. *East India Co.* 3 East, 192, was very different.   The nature of the plaintiff's case required him to prove a negative, to wit, that no notice was given of the dangerous nature of the contents of a certain jar, containing an inflammable substance, laden on board the plaintiff's ship by the defendants' agent.   The fact that no notice was given, could be known only to the officer, who laded the article on board, and the mate of the ship, who received it, but who was dead.   The court ruled, that without calling the other person, who did know the fact and was living, the plaintiff could not call other persons, attached to the ship, to prove only that they had not received such notice.

As to the testimony to the books, the witnesses merely referred to their books as *memoranda,* to aid their recollection

In all cases, where account books are kept, or schedules, or *memoranda* taken down, the testimony as to dates, numbers and sums, must mainly depend upon such memoranda for its accuracy.

*Judgment on the verdict.*